LOUIS M. BUBALA III, ESQ.
Nevada Bar No. 8974
ARMSTRONG TEASDALE LLP
50 West Liberty Street, Suite 950
Reno, NV 89501
Telephone:  (775) 322-7400
Facsimile:  (775) 322-9049
Email:  lbubala@armstrongteasdale.com

Counsel for Defendant Walter J. "Jed" Frost

**ELECTRONICALLY FILED ON
AUGUST 8, 2013**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>ASTRATA GROUP INCORORATED,<br><br>        Debtor. | Case No.:  BK-N-09-52652-GWZ<br><br>Chapter 11 |
| JOHN BRYAN, TRUSTEE, THE LITIGATION TRUSTE OF ASTRATA GROUP, INC.,<br><br>        Plaintiff,<br>vs.<br><br>VISION OPPORTUNITY CHINA LP, a Guernsey limited partnership, VISION OPOPRTUNITY CHINA FUND LIMITED, a Guernsey corporation, VISION OPPORTUNITY MASTER FUND, LTD., a Cayman Islands company, VISION CAPITAL ADVANTAGE FUND, L.P., a Delaware limited partnership, VCAF, GP, LLC, a Delaware limited liability company, VISION CAPITAL ADVISORS, LLC, a Delaware limited liability company, JOHN CLOUGH, an individual, JED FROST, an individual, ROBIN LITTAU, an individual,<br><br>        Defendant. | **Adv. No.:  10-05039-GWZ**<br><br>**MOTION TO DISMISS**<br><br>**Hearing Date:  9/25/13**<br>**Hearing Time:  2:00 p.m.** |

This case should be dismissed based on Mr. Bryan's failure to serve Mr. Frost or prosecute this case for more than three years.  There was one attempt to serve Mr. Frost two and a half years ago.  The service was ineffective as a matter of law for international service.  Bolstering those points, Mr. Bryan has never taken any steps to prosecute this case against Mr. Frost.  If Mr. Bryan believed he had legitimate claims against Mr. Frost, he had more than sufficient time to prosecute them.  Mr. Bryan has done nothing, and the case should be dismissed.

I.      **Procedural History**

   a.  **Astrata's bankruptcy**

Astrata Group Inc. filed for bankruptcy on August 6, 2009 (Main Case Dkt. #1).  Mr. Frost was a creditor (Cl. Reg. #7) and objected to debtor's plan of reorganization.  Debtor resolved the objections with a plan modification that included a release of all known and unknown claims against Mr. Frost (Main Case Dkt. #157).  The Court approved the plan, including specific approval of the releases, on December 15, 2009 (Main Case Dkt. #174).  Notwithstanding the agreement, debtor refused to give Mr. Frost the release he was promised.  On May 20, 2010, Mr. Frost moved to enforce the plan and compel execution of the release in the form he prepared based on the plan terms (Main Case Dkt. #231, 242).  The Court granted Mr. Frost's motion on September 21, 2010, compelling debtor and related parties to execute the release (Main Case Dkt. #257).  Debtors and the related parties did, in fact, execute the release.

   b.  **Mr. Bryan's lawsuit against Mr. Frost**

The plan also provided for the creation of a post-confirmation litigation trust, run by debtor's former chief restructuring officer, John Bryan.  On June 11, 2010, notwithstanding the release, Mr. Bryan filed an action against Mr. Frost and others (Ct. Dkt. #1).  Mr. Bryan alleges that Mr. Frost conspired with one of debtor's directors to steal debtor's contractual rights and misappropriate its trade secrets.  *Id.*  Mr. Bryan has amended his complaint three times, stating its claims against Mr. Frost as (1) aiding and abetting a breach of fiduciary duty by the director and (2) misappropriation of trade secrets (Ct. Dkt. #57, 102, 190 in Counts 3-4).

In each of the four complaints, Mr. Bryan alleges that Mr. Frost is a "resident of California and Indonesia" (Ct. Dkt. #1 at ¶23; Ct. Dkt. #57 at ¶24; Ct. Dkt. #102 at ¶17; Ct. Dkt. #190 at ¶17).  Mr. Frost neither concedes nor denies this allegation, but the allegations of the complaint must be accepted as true for purposes of a motion to dismiss.  *E.g., Emeldi v. University of Or.*, 698 F.3d 715, 728 (9th Cir. 2012), *rev'g* Case No. 08-6346-HO, 2010 WL 2330190 (D. Or. June 4, 2010).

Mr. Bryan requested a first summons for Mr. Frost on June 11, 2010 (Ct. Dkt. #2).  It was issued on June 14, 2010 (Ct. Dkt. #15), and an amended summons was issued on July 21, 2010 (Ct. Dkt. #28).  As neither summons was served, Mr. Bryan requested a third summons, which was

issued on January 20, 2011 (Ct. Dkt. #75, 80).  This summons was not served, resulting in another request for and issuance of a fourth summons on February 8, 2011 (Ct. Dkt. #92, 95).

Mr. Bryan never served Mr. Frost in California.  This is notwithstanding the fact that such service made within the United States could have been accomplished by regular, first class United States mail.  Fed. R. Bankr. P. 7004(b)(1).  The only limitation is that this service had to be completed within 120 days of the date of filing the complaint, subject to dismissal if not timely served.  Fed. R. Bankr. P. 7004, inc. Fed. R. Civ. P. 4(m).  Again, though, Mr. Bryan never served Mr. Frost in California in over three years since filing the complaint, let alone within 120 days.

However, Mr. Bryan claims he served Mr. Frost with the summons and complaint sent by "regular, first-class United States mail" to Indonesia on February 9, 2011 (Ct. Dkt. #98).  The claimed service would have occurred two days before a scheduling hearing in the proceeding.  On February 11, 2011, Mr. Bryan's lead counsel told the Court that Mr. Bryan "affected service by registered mail" on Mr. Frost and another defendant, Mr. Clough (Ct. Dkt. #99, Trans. at 32:2-8).  Counsel's statement about the method of service (registered mail) is inconsistent with the declaration filed two days prior by the assistant to Mr. Bryan's local counsel, who actually mailed the papers (regular, first-class mail).

In the two-and-half years since the purported service, Mr. Bryan has never served Mr. Frost with any other papers, contrary to its obligation to serve virtually all papers on all parties in a case.  Fed. R. Bankr. P. 7005, inc. Fed. R. Civ. P. 5(a) & (b)(2).    Mr. Bryan filed a second and third amended complaint but did not file a certificate of service for either document (Ct. Dkt. #102, 190).  *See* L.R. 7005 (requiring timely filing of certificates of service).  Mr. Bryan filed certificates of service on three other occasions.  None of them reflect service on Mr. Frost (Ct. Dkt. #123, Opp. to Vision Mtn. to Dismiss, May 11, 2011; Ct. Dkt. #137, Opp. to Littau Mtn. to Dismiss, Sept. 7, 2011; and Ct. Dkt. #198, Mtn. to Amend, March 28, 2013).  Mr. Frost is not listed as receiving service on any of the certificates from the Bankruptcy Notice Center (Ct. Dkt. #105, 106, 121, 122, 146, 152, 179, 180).

The docket does not reflect any effort to prosecute this case.  There are no offensive motions to move the case forward, but there are numerous dismissals.  On February 1, 2011, the Court

approved the stipulated order dismissing with prejudice the Tridex defendants and withdrawing the allegations against Lim Chee Kiat (Ct. Dkt. #87, approving Ct. Dkt. #86).  On March 11, 2011, the Court granted the Vision defendants' motion to dismiss the claims in the first amended complaint, with leave to amend the complaint (Ct. Dkt. #103).  On March 22, 2012, the Court granted Defendant Robin Littau's motion to dismiss (Ct. Dkt. #154).  On November 5, 2012, the Court approved the stipulated order dismissing with prejudice the Vision defendants (Ct. Dkt. #194, approving Ct. Dkt. #193).

The last action to "prosecute" the action was September 17, 2012, when Mr. Bryan filed its third amended complaint (Ct. Dkt. #190).  Since then, the only matters presented to this court are the stipulated dismissal of Vision defendants and Mr. Bryan's unresolved motion for leave to file a fourth amended complaint to remove allegations and claims as to Mr. Littau (Ct. Dkt. #195), a defendant dismissed a year and a half prior to the motion (Ct. Dkt. #154).  Mr. Bryan simply is not prosecuting this case.  *See* L.R. 7041 (authorizing dismissal for nonprosecution for one year).

**II.      Argument**

      **a.   The case should be dismissed for ineffective service on Mr. Frost**

The only suggestion of service on Mr. Frost is the declaration filed by the assistant to Mr. Bryan's local counsel, stating she served him by regular, first-class United States mail sent to an address in Indonesia.  Such service is not effective, the summons must be quashed, and the case should be dismissed.  Fed. R. Bankr. P. 7012, inc. Fed. R. Civ. P. 12(b)(5).

To determine whether service of process was proper, courts look to the requirements of Federal Rule of Civil Procedure 4, incorporated by Federal Rule of Bankruptcy Procedure 7004. *Campos v. Beck (In re Beck)*, Adv. P. 4:11-AP-00709, 2011 WL 4623937, *2 (Bankr. D. Ariz. Sept. 29, 2011).  When a defendant challenges service, the plaintiff bears the burden of establishing the validity of service under Rule 4.  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

      **i.   Service is ineffective under Rule 7004(b) since it was mailed internationally**

Federal Rule of Bankruptcy Procedure 7004(b) provides that "Service may be <u>made within the United States</u> by first class mail postage prepaid" (emphasis added).  Mr. Bryan's certificate of service as to Mr. Frost states the summons was sent by first class mail (Ct. Dkt. #98).  However, the

papers were not mailed within the United States, but to Indonesia. *Id.* Therefore, this service on Mr. Frost is not effective under Rule 7004(b). *Hawaii Biotech, Inc. v. Acuvax, Ltd. (In re Hawaii Biotech, Inc.)*, Adv. P. 10-90008, 2010 WL 1538550, *1 (Bankr. D. Haw. April 16, 2010).

### ii.  Service also is ineffective under international service standards

Mr. Bryan did not comply with the law regarding international service.  International service is governed by Federal Rule of Civil Procedure 4(f), incorporated by reference in Federal Rule of Bankruptcy Procedure 7004(a)(1).  Mr. Bryan has not complied with any of the standards, as detailed below, so the summons should be quashed and the case dismissed.

The civil rule states in full:

Unless federal law provides otherwise, an individual - other than a minor, an incompetent person, or a person whose waiver has been filed - may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

   (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

   (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

   (C) unless prohibited by the foreign country's law, by:

      (i) delivering a copy of the summons and of the complaint to the individual personally; or

      (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

### 1.  Rule 4(f)(1):  There are no internationally agreed means of service

The first provision is not applicable because Indonesia is not a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, 20 U.S.T. 361 (1969). *See* Hague Conference on Private International Law, Status Table 14: Convention of 15 November 1965 on the

Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters  (listing countries that are party to the treaty, and not listing Indonesia), *available at* http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last accessed Aug. 8, 2013); *Body by Jake Global LLC v. Susanto*, Case No. C 11-03216 JW, 2012 WL 1570019, *2 & n.8 (N.D. Cal. May 2, 2012).

**2.  Rule 4(f)(2):  Mr. Bryan's use of regular mail is not reasonably calculated to give notice as a matter of law**

The question is whether mail service described in Mr. Bryan's certificate of service may be reasonably calculated to give notice.  The rule looks at three possible methods, all of which are unavailing to Mr. Bryan in the current circumstances.

First, Rule 4(f)(2)(A) considers whether the service method is prescribed by the foreign country's law for service in that county.  The Ninth Circuit, however, held as a matter of law that Rule 4(f)(2)(A) does not permit international mail service by parties.  *Brockmeyer v. May*, 383 F.3d 798, 806-08 (9th Cir. 2004).  The Circuit held in part that international mail service under Rule 4(f)(2)(A) is contrary to explicit authorization of mail service by the court clerk under Rule 4(f)(2)(C)(ii), and that it would obviate the right to send via regular mail with a requested waiver of service under Rule 4(d).  *Id*.  Judge Riegle cited Rule 4(f) and *Brockmeyer* in denying a motion for default judgment sought after the plaintiff's mailing of a summons and complaint to an international defendant.  *Cory v. Real Wisdom Int'l, Ltd. (In re Pacific Magtron, Inc.)*, Adv. No. 06-1168, 2007 WL 836826, *1 (Bankr. D. Nev. March 15, 2007).

Even without the Circuit's pronouncement in *Brockmeyer*, other courts recognize that mail is not an authorized service method in Indonesia.  *Graval v. P.T. Bakrie & Bros.*, 986 F. Supp. 1326, 1329 (C.D. Cal. 1996) (citing evidence from Indonesian lawyer), *disapproved of on other grounds, Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015-16 (9th Cir. 2002); *Export-Import Bank v. Asia Pulp & Paper Co.*, Case No. 03 Civ. 8554 (LTS) (JCF), 2005 WL 1123755, *2-4 (S.D.N.Y. May 11, 2005).  *Export-Import Bank* noted that the "Guidelines to Carrying Out of the Task and Administration of the Court-Book II," from the Supreme Court of the Republic of Indonesia, states that "Summons to parties to attend a court proceeding must be delivered by a bailiff."  *Id.* at *2.

Second, Rule 4(f)(2)(B) provides for service as the foreign authority directs in response to a letter rogatory or letter of request.  No such letter has been issued, so this provision is inapplicable.

Third, Rule 4(f)(2)(C)(i) provides for personal service.  This is inapplicable since Mr. Bryan has not asserted that he personally served Mr. Frost.

Fourth, Rule 4(f)(2)(C)(ii) provides for mail service by the clerk of the court with a signed receipt.  Mr. Bryan's mailing fails because it was sent by his counsel, not the court clerk. *Brockmeyer*, 383 F.3d at 805; *Body by Jake Global LLC,* 2012 WL 1570019 at *2.  Mr. Bryan's mailing also fails because it was sent by regular, U.S. first-class mail, with no evidence that it required a signed receipt.  *Brockmeyer*, 383 F.3d at 805.

### 3.    Rule 4(f)(3):  Mr. Bryan never sought an order authorizing service

This subsection provides for other service methods as ordered by the court so long as they are not prohibited by an international agreement.  In this case, Mr. Bryan never asked the court to authorize service on Mr. Frost in any way, let alone by mail.  Additionally, the Ninth Circuit rejected authorization sought *nunc pro tunc.  Brockmeyer*, 383 F.3d at 806 (citing cases).

### iii.    Mr. Bryan's conduct acknowledges that he did not serve Mr. Frost

Although Mr. Bryan represented that he served Mr. Frost with a summons, his behavior after the fact underscores the deficiencies in the purported service.  Mr. Bryan has not filed anything since then to reflect service on Mr. Frost as a party to the case, contrary to his obligations to serve virtually all papers on all parties in the case.  Fed. R. Bankr. P. 7005, inc. Fed. R. Civ. P. 5(a) & (b)(2); L.R 7005.  Furthermore, since the alleged service of the summons on Mr. Frost, Mr. Bryan has filed two amended complaints without any evidence of their service on Mr. Frost.  Rule 5(a)(1)(B) explicitly requires a plaintiff to serve amended complaints on all parties, yet there is no evidence that Mr. Bryan served them on Mr. Frost.  The same is true when Mr. Bryan filed certificates of service for other papers, as well as the BNC certificates.  They do not reflect any service on Mr. Frost.  The failure to serve Mr. Frost with any papers after the alleged service of the summons can only lead to one conclusion:  Mr. Bryan did not actually serve Mr. Frost with the summons.

Service on a party is excused only if the party is in default for failing to appear.  Fed. R. Civ. P. 5(a)(2).  Mr. Bryan has never sought to hold Mr. Frost in default.  (The lack of a default itself is further evidence (1) that Mr. Bryan did not treat its purported service as effective and (2) of his failure to prosecute this case.)  If Mr. Bryan believed he had served Mr. Frost in Indonesia by the use of regular, first-class mail, he was obligated to serve him with all subsequent papers filed in court.  Fed. R. Civ. P. 5(a)(1).  Mr. Bryan has not served Mr. Frost with anything, effectively conceding that his purported service of the summons was ineffective.

### iv.    Without effective service, this case should be dismissed

Mr. Bryan's claim of overseas service by first-class mail is not authorized for international service, and it does not satisfy any of the alternatives for service in Indonesia.  More than three years have passed since Mr. Bryan filed this action.  Nearly two-and-a-half years have passed since Mr. Bryan allegedly served Mr. Frost.  Mr. Bryan has not taken any steps to prosecute his claims against Mr. Frost.  The case should be dismissed because the ineffective service, particularly given Mr. Bryan's lack of diligence in prosecution.

### b.  The case should be dismissed for failure to serve Mr. Frost

Even without regards to the methods and propriety of service in Indonesia, Mr. Bryan has always alleged that Mr. Frost also resides in California.  Service could have been made within the United States by first class mail under Rule 7004(b).  No such attempt has been made.  Between the ineffective international service and failure to achieve service in the United States, this case should be dismissed.

Federal Rule of Civil Procedure 4(m), incorporated by Rule 7004, provides that the complaint shall be dismissed if not served within 120 days of the filing of the complaint, unless the plaintiff can show good cause why such service was not made or the court exercises its discretion to extend the service period based on excusable neglect.  *E.g., Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 512-14 (9th Cir. 2001).  The provision only applies regarding service in the United States, not service outside of the United States.  But in this instance, by the very allegation of Mr. Bryan's complaint, he has always been able to serve Mr. Frost at a residence in California.  Mr. Bryan never did so.  The presumptive time period for service of 120 days has lapsed nine fold, with more than

three years gone without any effective service. The Court should dismiss the complaint against Mr. Frost for failure to timely serve him under Rule 4(m).

### c. The case should be dismissed for failure to prosecute

A court may dismiss a complaint for failure to prosecute. Fed. R. Civ. P. 41(b), inc. Fed. R. Bankr. P. 7041. In deciding whether to dismiss an action for failure to prosecute, the court weighs five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *George v. City of Morro Bay (In re George)*, 322 F.3d 586, 591 (9th Cir. 2003).

Mr. Frost satisfies these five factors. In over three years, this adversary proceeding has essentially not moved beyond the filing of a complaint. This matter has been effectively dormant since the Court granted Vision's dismissal with prejudice over eight months ago. This matter's stagnation is contrary to the public interest in expeditious resolution of litigation. Outside of filing the complaint, Mr. Bryan has not taken any steps to prosecute this matter. As Mr. Bryan has not fixed the deficiencies referred to in his latest motion to amend his complaint, the matter remains outstanding. Dismissal of this case will further help the Court manage its docket. Any risk of prejudice to Mr. Bryan is offset by his failure to prosecute his claims. Public policy may favor disposition of the case on the merits, but nothing has happened to suggest that Mr. Bryan seeks resolution on the merits. Finally, a lesser sanction is not warranted given the time that has passed. A fair weighing of these factors supports dismissal of this case for failure to prosecute.

///

///

///

**III.    Conclusion**

This case has gone on too long.  The case was filed less than six months after debtor granted a release to Mr. Frost.  The complaint involves baseless allegations that even if true, appear to be subject to the release.  Yet the case was filed.  In the three years since then, nothing has happened.  There was one "attempt" to serve Mr. Frost, done perhaps just as much for show as anything since there was a court hearing two days later.  But the service by first-class mail to Indonesia does not comply with any of the service standards, and Mr. Bryan never sought to serve Mr. Frost in California.  This case should end now for the ineffective service, the absence of service, and the failure to prosecute the claims against Mr. Frost.

Dated this 8th day of August, 2013

ARMSTRONG TEASDALE LLP

By:   /s/ Louis M. Bubala III
Louis M. Bubala III

Counsel for Walter J. "Jed" Frost